<hr/>

## THE ROBERT BURNETT.

### LEHIGH COAL & NAV. CO. v. THE ROBERT BURNETT.

(District Court, S. D. New York. May 8, 1893.)

TUGS AND TOWS — SEEKING HARBOR IN THREATENING WEATHER — NECESSARY ALLEGATIONS OF LIBEL—PROOF.

In order to hold a tug liable for negligence in losing her tow, because, in threatening weather, she passed a safe harbor to go to one which she knew she could not enter except under favorable conditions, such fault must be alleged in the libel, and the threatening nature of the weather at the time of passing the, safe harbor proved. Where a tug of proper draft for the service, passed Huntington harbor, in Long Island sound, and attempted to enter the Missiquog river, on whose bar the depth of water varies according to the state of wind and tide, and, being unable to do so, turned back for Huntington harbor, as is customary under such circumstances, and on her return lost part of her tow in the increasing sea, and it was not alleged in the libel, or proved, that on first passing Huntington harbor the weather was so threatening that she should then have sought shelter, *held*, that her negligence was not proved, sufficient to hold her liable for the loss.

In Admiralty. Libel for negligence of tug in losing part of her tow. Dismissed.

Wing, Shoudy & Putnam, for libelants.
Stewart & Macklin, for claimants.

BROWN, District Judge. On the 31st August, 1892, the steam tug Robert Burnett took in charge 10 chunkers loaded with coal, to tow them to St. Johnland, reached by a small narrow river, Missiquog, about 10 miles beyond Huntington on Long Island sound. The tow was in two tiers of five chunkers each, upon a hawser of about 60 or 70 fathoms. She left at about 11 P. M. and arrived at the bar of the river at about 4 o'clock the following afternoon. The water on the bar is shallow, and the channel shifting, through the operation of winds and tides; and the depth of water varies with the conditions of the wind and tide. The chunkers drew 6 feet; the tug, 7 feet 2 inches. On arrival, with the aid of a local pilot, who was called in accordance with the usual practice, it was found that there was only 6½ feet of water at high tide. Huntington was the nearest and only safe place to go to, and the tug, after finding that entrance was impossible, turned around to go back to Huntington. The wind and sea on the return became such that the chunkers of the head tier were filled with water, and one after another were sunk, or beached by the tug, before arriving at Huntington. The libel is filed to recover damages, alleging unfitness of the tug, in-

competence of the master, and negligence in not having a helper, and in turning back. No other faults are alleged.

The proofs do not sustain any of the charges of negligence. The Burnett drew somewhat less water than the tugs customarily employed in taking barges into the Missiquog river. The uncertainties of entrance there must have been well known to all concerned. The practice was to go to the bar and cross it at high tide if there was sufficient water; if not, to return to Huntington. The Burnett pursued this practice, and cannot be charged with fault if she was navigated with all reasonable caution and skill in accordance with this general practice, unless there were special conditions of wind or weather which made a departure from the usual course reasonably necessary. At the close of the case it was contended, that at about 12 o'clock noon, when the tug and tow passed Huntington, there was so fresh a wind from the northwest that it must have been reasonably apparent to the pilot of the tug that such a tow of chunkers could not safely be brought back to Huntington in case no entrance could be effected on arrival at the Missiquog river; and that he was therefore bound to put in at Huntington, instead of pursuing the usual practice of going on to try the water at St. Johnland. The northwest wind itself would be no obstacle to entrance as usual.

The chunkers have a freeboard of only about 20 inches. They were plainly unfit to head much sea in the Sound; and if the faults stated had been charged in the libel, and I was satisfied upon the evidence that there was such unpromising weather at the time of passing Huntington that the entire safety of the fleet would depend upon the chance of crossing the bar and getting into the river, I should hold the tug blamable. Bouker v. Smith, 40 Fed. Rep. 839. Knowing the uncertainties that attended the entrance to that bar, the pilot of the tug would have no right to risk the entire safety of the chunkers on the single chance of entrance on arrival, when it was apparent that if he could not cross the bar, he could not expect to get back. It was not an uncommon thing for such tows to find the water too low, and be obliged to return to Huntington in consequence.

The evidence on the part of the tug, however, is that there were no such indications in the condition of the wind and weather at the time of passing Huntington. Some of the libelant's witnesses confirm the testimony for the tug in that respect, and such I am satisfied was the fact. No such charge is contained in the libel, and this contention appears for the first time at the close of the case. All the faults alleged in the libel being disproved, the libel must be dismissed, with costs.